LEWIS BRISBOIS

Peter T. Shapiro
140 Broadway, Suite 3100
New York, New York 10005
Peter.Shapiro@lewisbrisbois.com
Direct: 212.232.1322

October 28, 2026

**VIA ECF**
Hon. Anne Y. Shields
United States Magistrate Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: *Malia v. Catholic Cemeteries of the Roman Catholic Diocese of Rockville Centre, Inc.* (Case No. 2:26-cv-03134-AYS)

Dear Judge Shields:

The parties, by their respective counsel, jointly submit this letter and Discovery Plan Worksheet pursuant to this Court's Individual Rule VI and Appendix G, and the Court's Initial Conference Order dated August 24, 2026 (ECF Docket Entry 10), prior to the October 29, 2026, conference.

**1. Name of The Case**

*Malia v. Catholic Cemeteries of the Roman Catholic Diocese of Rockville Centre, Inc.*

**2. Basis for Federal Jurisdiction**

Plaintiff asserts claims under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* (hereinafter the "ADA"), over which this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the ADA presents a federal question.

Plaintiff's related claims under the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* (hereinafter the "NYSHRL"), arise from the same common nucleus of operative facts and fall within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

**3. Statement Confirming That All Defendants Have Been Served and Answered**

Defendant has been served, has appeared by counsel (Docket Entries 5, 8), and filed its Answer on July 30, 2026 (Docket Entry 9). By appearing without contesting service, Defendant has waived any defenses based on service.

**4. Statement Regarding Counterclaims or Crossclaims**

Defendant has not asserted any counterclaims or crossclaims.

**5. Plaintiff's Explanation of The Facts of The Case**

Plaintiff worked for Defendant as a field worker at its Long Island cemeteries for more than eight (8) years, from July 5, 2016 until Defendant terminated his employment by certified letter dated February 7, 2025. In April 2024, Plaintiff suffered three (3) heart attacks over three (3) consecutive days, the first while performing irrigation repairs on Defendant's grounds, and he was hospitalized and received three (3) stents. Plaintiff returned to work on May 20, 2024, one week after the passing of his stepfather, but suffered another cardiac event on June 24, 2024 that required the repair of his existing stents and the placement of two (2) additional stents.

On September 25, 2024, Plaintiff's cardiologist cleared him to return to work with restrictions, and Plaintiff immediately called Superintendent Chris Commando (hereinafter "Commando"), read the restrictions aloud, and asked to return to work with a reasonable accommodation. Commando responded, "we don't do modified positions."

On September 27, 2024, Plaintiff delivered his physician's written note, which Defendant admits receiving, and Commando again stated that no modified roles were available and offered to draft a resignation letter for Plaintiff to sign. On October 2, 2024, Defendant's Human Resources Coordinator, Pamela Sugihara, read Plaintiff a letter by telephone stating that he had "declined an office position" and "resigned," which Plaintiff immediately denied, and Defendant refused Plaintiff's request for a copy of that letter.

When Plaintiff raised the issue with Commando on November 7, 2024, Commando characterized it as a misunderstanding and warned that legal counsel may become involved. Defendant's own records confirm that, on November 14, 2024, Plaintiff provided a note from his cardiologist dated November 11, 2024, stating that "[e]xcept digging the Graves he is permitted to carry out rest of all the jobs without any restrictions," together with Defendant's job description marked to show the essential duties Plaintiff could perform.

Defendant therefore knew no later than November 14, 2024 that Plaintiff's only restriction was grave digging, yet it never met with Plaintiff to discuss relieving him of that single task, restructuring his duties among the field crew, or reassigning him to a vacant position.

Instead, Defendant sent Plaintiff form letters demanding that his physician address whether he could lift one hundred (100) pounds and get into an open grave, and then terminated him for purportedly failing "to continue the interactive process." Plaintiff did not abandon the interactive process, as he requested an accommodation, provided two (2) physician's notes, and was told by Defendant's Superintendent that Defendant does not offer modified positions and that he should sign a resignation letter.

Throughout his tenure, Plaintiff was also subjected to verbal abuse by Field Manager Ron Gregory and to a physical sexual assault by a co-worker, witnessed by another employee, which Plaintiff reported to Defendant's leadership without any corrective action, after which the co-worker was promoted while Plaintiff was passed over for advancement and denied performance reviews.

Plaintiff asserts claims for disability discrimination, including Defendant's failure to reasonably accommodate him, and retaliation under the ADA, 42 U.S.C. §§ 12112 and 12203, and for disability discrimination, retaliation, and hostile work environment under the NYSHRL, N.Y. Exec. Law § 296.

An employer that knows of an employee's disability must engage in an interactive process to identify a reasonable accommodation, see Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008), and reasonable accommodations expressly include job restructuring and reassignment to a vacant position, see 42 U.S.C. § 12111(9)(B).

Whether a task is an essential function is a fact-specific inquiry that does not turn on the employer's job description alone, see McMillan v. City of New York, 711 F.3d 120, 126 (2d Cir. 2013), and a request for an accommodation is itself protected activity, see Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 149 (2d Cir. 2002).

The NYSHRL must be construed liberally to accomplish its remedial purposes, regardless of how federal civil rights laws have been construed, N.Y. Exec. Law § 300, and it likewise requires a good faith interactive process, see Jacobsen v. N.Y.C. Health & Hosps. Corp., 22 N.Y.3d 824, 837-38 (2014).

Plaintiff seeks back pay, front pay, compensatory damages for emotional distress, punitive damages, and attorneys' fees and costs.

## 6. Defendant's Explanation of The Facts of The Case

Defendant terminated Plaintiff's employment after he became disabled and unable to work but only did so after he failed and refused to participate in the interactive process by providing the required medical documentation to warrant a leave. It was evident that Plaintiff could no longer perform the essential functions of his position as a Semi-Skilled Field Worker following his heart attack and subsequent medical complications. Defendant repeatedly extended Plaintiff's leave beyond

his FMLA entitlement, sought medical information regarding his restrictions and ability to return to work, and attempted to engage in the interactive process for several months. However, Plaintiff did not provide the requested medical documentation regarding his restrictions and did not respond to subsequent efforts to discuss his return to work. In addition, Plaintiff's position required strenuous physical labor, including digging graves, assisting with burials and entombments, carrying and lowering caskets, performing landscaping work, and lifting up to 100 pounds. Plaintiff acknowledged he could not return to his regular duties and instead sought light-duty work, but no such position existed and Plaintiff conceded that he lacked the skills necessary for office work. Thus, Defendant terminated Plaintiff's employment because he was unable to perform the essential functions of his position and ceased communicating with Defendant regarding further leave or return to work. Employers are not required to extend indefinite leave when, as here, the employee does not respond to requests for information or provide an estimated return to work date supported by medical evidence.

Additionally, Defendant denies the allegations of verbal abuse and asserts that it had no notice of the alleged co-worker assault and is therefore not liable therefor.

**7. <u>HIPAA Statement</u>**

All HIPAA-compliant authorizations will be provided by Plaintiff on or before Monday, November 16, 2026.

**8. <u>Joint Statement Describing In Detail The Paper Discovery That Can Be Exchanged Without The Necessity for Formal Document Requests</u>**

Because this action challenges Plaintiff's termination, the parties will exchange the documents and information required by the Court's Initial Discovery Protocols for Employment Cases Alleging Adverse Action (Appendix F to Your Honor's Individual Rules) without the necessity for formal document requests or interrogatories.

Paper discovery that Defendant may exchange would include:

a. Plaintiff's personnel file;

b. Plaintiff's payroll records;

c. Documents relevant to any complaints by Plaintiff;

d. Documents concerning Plaintiff's leave and possible return to work;

e. Plaintiff's job description;

f. Plaintiff's separation from employment report; and

g. Relevant workplace policies and records reflecting Plaintiff's workplace trainings.

Defendant made an initial production on October 19, 2026, which Plaintiff is reviewing, and Plaintiff reserves the right to raise any deficiencies with Defendant in accordance with Your Honor's Individual Rules.

Paper discovery that Plaintiff will exchange would include:

a. All communications between Plaintiff and Defendant concerning the factual allegations or claims at issue in this lawsuit;

b. Plaintiff's physician's notes dated September 26, 2024 and November 11, 2024, and medical records concerning his cardiac condition and restrictions, subject to the HIPAA-compliant authorizations discussed above;

c. Plaintiff's charge of discrimination filed with the U.S. Equal Employment Opportunity Commission (hereinafter the "EEOC"), the EEOC's Notice of Right to Sue, and Plaintiff's non-privileged submissions to the EEOC; and

d. Any other documents upon which Plaintiff relies to support his claims.

The parties will complete such paper discovery on or before Wednesday, December 23, 2026, which is within sixty (60) days of the date of this letter.

**9. <u>A Date for Submission of A Joint Status Letter and Proposed Date for the Next Telephone Status Conference with the Court</u>**

The parties propose Wednesday, January 6, 2027, for submission of a joint status letter and Wednesday, January 13, 2027, or such other date as is convenient for the Court, for a telephone status conference with the Court.

**10. <u>Parties' Consent To The Jurisdiction of The Magistrate Judge</u>**

The parties have discussed the issue of consent to the jurisdiction of the Magistrate Judge for all purposes, including trial, entry of final judgment, and direct review by the United States Court of Appeals for the Second Circuit, and the parties do not consent to the jurisdiction of the Magistrate Judge for all purposes.

We thank the Court for its attention to this matter.

Respectfully,

/s/ Emanuel Kataev, *Esq.*

Emanuel Kataev, Esq. of
SAGE LEGAL LLC
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff*
*John F. Malia*

/s/ Peter T. Shapiro

Peter T. Shapiro of
LEWIS BRISBOIS BISGAARD &
SMITH LLP

*Attorneys for Defendant*

cc: all counsel of record (via ECF)